# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY LANGLEY,<br><br>        Plaintiff,<br><br>   v.<br><br>TULARE POLICE DEPARTMENT and JOSE COLEGIO,<br><br>        Defendants.<br>_____/ | **CASE NO. 1:16-cv-00336-DAD-SKO**<br><br>**ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT**<br><br>(Doc. 63)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION PROCEED AGAINST DEFENDANT COLEGIO ON PLAINTIFF'S EXCESSIVE FORCE AND UNREASONABLE SEARCH AND SEIZURE CLAIMS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED**<br><br>(Docs. 60 & 62)<br><br>**OBJECTIONS DUE: 21 DAYS** |

### I.    BACKGROUND

Plaintiff, Randy Langley, is a prisoner in the custody of the California Department of Corrections and Rehabilitation and is housed at the Sierra Conservation Center. On February 5, 2016, Plaintiff, proceeding *pro se*, filed a civil rights complaint in the Superior Court of

California, County of Tulare, against Defendants "Tulare Police Department," "Officer Colejio," and "Doe 1." (Doc. 2, Ex. 1 at 7–11.) Defendant City of Tulare (erroneously named as "Tulare Police Department")[1] filed its answer in state court and, on March 10, 2016, removed the action to this Court. (Doc. 2.) On July 20, 2017, Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on August 4, 2017. (Doc. 49.) The Court then vacated the dates set in the Court's scheduling order until the Complaint had been screened and cognizable claims had been found on which Plaintiff may proceed. (*See id.*)

On September 19, 2017, the undersigned found that Plaintiff's complaint failed to state a cognizable federal claim. (Doc. 56.) Plaintiff was granted thirty (30) days leave to file an amended complaint curing the pleading deficiencies identified in the order. (*Id.*) On October 20, 2017, Plaintiff filed a first amended complaint against "Jose Colegio" and "Tulare Police Department" (collectively "Defendants"). (Doc. 57.)[2]

The undersigned screened the first amended complaint on November 15, 2017, finding Plaintiff's excessive force and unreasonable search and seizure claims against Defendant Jose Colegio cognizable, and all other claims and Defendant "Tulare Police Department" (City of Tulare) subject to dismissal. (Doc. 59.) Plaintiff was granted twenty-one (21) days leave to file an amended complaint curing the pleading deficiencies identified in the order. (*See id.*) Plaintiff's second amended complaint, or a motion seeking an extension of time, was due to be filed by December 6, 2017. (*See id.*)

//

---

[1] The Tulare Police Department is a municipal department of the City of Tulare and is not considered a "person" within the meaning of Section 1983. *See United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (noting that municipal police departments and bureaus are generally not considered "persons" within the meaning of Section 1983); *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal.1996) (dismissing sua sponte Santa Clara Department of Corrections as improper defendant); *Jewett v. City of Sacramento Fire Dep't*, No. CIV. 2:10–556 WBS KJN, 2010 WL 3212774, at *2 (E.D. Aug. 12, 2010) (finding fire department not a "person" under Section 1983 and dismissing suit against it); *Wade v. Fresno Police Dep't*, No. Civ. 09–0588 AWI DLB, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (finding police department is not a "person" under Section 1983). Thus, Plaintiff's claim against the Tulare Police Department is not cognizable under Section 1983, and is analyzed as if brought against the City of Tulare.

[2] On November 3, 2017, Defendant City of Tulare (erroneously named as "Tulare Police Department") filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. 12(b)(6) (Doc. 58), which was denied as moot as a result of the Court's screening of the First Amended Complaint. (Doc. 59.)

Although Plaintiff filed a motion for summary judgment on November 27, 2017 (Doc. 60), Plaintiff did not file his second amended complaint until December 13, 2017 (Doc. 62 ("Second Am. Compl.")), along with a motion for extension of time in which to amend (Doc. 63). Good cause having been presented to the Court, Plaintiff's motion for extension of time is granted nunc pro tunc to December 13, 2017, and for the reasons set forth herein, the undersigned recommends that this action proceed against Defendant Jose Colegio on Plaintiff's excessive force and unreasonable search and seizure claims. The undersigned further recommends that Plaintiff's motion for summary judgment be denied without prejudice as to Plaintiff's excessive force and unreasonable search and seizure claims on grounds that it is premature, and denied as moot as to all other claims and defendants.

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's Second Amended Complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). If an action is dismissed on one of these three bases, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

### III. DISCUSSION

**A. Summary of the Second Amended Complaint**

Plaintiff is currently in state custody at Sierra Conservation Center. Plaintiff complains of acts that occurred before he was in custody, which Plaintiff avers are "not related" to his present incarceration. (Second Am. Compl. at 2.) Plaintiff names Jose Colegio and "Tulare Police Department" (City of Tulare) as defendants in this action and seeks monetary damages in the amount of "$100 million dollars." (*Id.* at 5.) Plaintiff also requests that Tulare Police Department and officers "to be put on notice not to harass [and] intimidate plaintiff and his family," and for the Tulare Police Department "to be accountable for Officer Colegio's actions and educate [and] update training, and to have a grievance process for the citizens that actually holds officers accountable [and] a disciplinary process designed to prevent officers from acting rogue and above the law." (*Id.*)

Plaintiff alleges Defendant Jose Colegio, an officer with the Tulare Police Department, "initiated contact" with him "under the pretense of consensual conversation." (Second Am. Compl. at 4.) According to Plaintiff, Defendant Colegio had "no prior contact with Plaintiff, and had no knowledge of Plaintiff's history or parole/probation status." (*Id.* at 4.) He contends he was "walking and was not a suspect [or] a person of interest." (*Id.*) Plaintiff alleges he "had no outstanding warrants" and "was not caught/seen by [Defendant Colegio] in the commission of a crime." (*Id.*) Plaintiff alleges he "surrendered to physical search/personal belongings search," resulting in the confiscation of a "1 inch pocket knife." (*Id.*) Plaintiff claims his identification was located in his backpack during the search, which Defendant Colegio ran "through [radio] dispatch" and Plaintiff was "clear of warrants/holds/etc." (*Id.* at 3, 5.) He contends he was searched by Officer Colegio "based on his claim of a 'known' drug and crime

4

1 | area." (*Id.* at 5.)

2 | According to Plaintiff, he asked Defendant Colegio "if he was being detained or
3 | arrested," and Defendant Colegio "informed Plaintiff he was not, and to notify P.O. of contact."
4 | (Second Am. Compl. at 3.) Plaintiff alleges that when he attempted to leave, Defendant
5 | Colegio obstructed his path by grabbing Plaintiff's left wrist and attempting to trip him. (*Id.* at
6 | 3–4.) Plaintiff contends that he put his hands on his head with his feet spread apart. (*Id.* at 4.)
7 | According to Plaintiff, Defendant Colegio then pulled his taser and ordered Plaintiff to "get
8 | down." (*Id.*) Plaintiff alleges that when he asked Defendant Colegio if he was going to shoot
9 | him, Defendant Colegio "discharged his taser striking Plaintiff in the face by [the] left eye and
10 | lower abdomen." (*Id.*) Plaintiff contends that Defendant Colegio was not attempting to arrest
11 | him and that he was "not a threat to officer, self, or the general public." (*Id.*)

12 | Plaintiff alleges that Defendant Colegio's "decision to taser" him was a "deliberate,
13 | intentional, and malicious act that resulted from inadequate training, policy and custom of
14 | [Defendant] Tulare Police Department to not hold officers accountable for violating citizens
15 | rights." (Second Am. Compl. at 7.[3]) According to Plaintiff, "[t]he injuries sustained are the
16 | result of Tulare Police Department policy that allows officers the choice to use professional
17 | decisions in the amount of force used, without fear of disciplinary action wether [sic] officer [is]
18 | wrong or right." (*Id.*) Plaintiff contends that Defendant "Tulare Police Department" (City of
19 | Tulare) "should have known that the use of excessive force by police has been escalating in
20 | both state and nation and that failure to adequately train police officers not to violate the rights
21 | of citizens is tantamount to tacit endorsement of the violation of such rights." (*Id.*) Plaintiff
22 | alleges further that Defendant "Tulare Police Department" (City of Tulare) has a "history of
23 | citizen complaints, alleging misconduct." (*Id.* at 8.)
24 | //
25 |
26 | ───────────────
27 | [3] This allegation, among others, is contained in a document titled "Declaration Of Plaintiff Randy Langley in 3rd Cause of Action," which is attached to the five-page Amended Civil Rights Complaint form. The undersigned construes it as included within the Second Amended Complaint.

Plaintiff's allegations state cognizable claims for excessive force and unreasonable search and seizure in violation of the Fourth Amendment against Defendant Jose Colegio, on which he should be allowed to proceed. However, for the reasons discussed in detail below, Plaintiff fails to state a cognizable claim against Defendant "Tulare Police Department" (City of Tulare).

**B.     Pleading Requirements: Federal Rule of Civil Procedure 8(a)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.

Persons proceeding pro se are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)), and courts are not required to indulge unwarranted inferences, *Doe I*, 572 F.3d at 681. To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere

consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**C.  Plaintiff's Claims**

    **1.  Fourth Amendment: Excessive Force**

Claims asserting officers used excessive force during the course of an investigatory stop, or other seizure are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on a § 1983 excessive force claim, a plaintiff must show that the officer's actions were objectively unreasonable under the circumstances. *Id.* at 388. Officers may only use such force as is objectively reasonable under the circumstances. *Id.* at 397; *see also Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

In assessing reasonableness, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1115 (9th Cir. 2005) (citation omitted). "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead," but if "there is probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Plaintiff alleges that, after he put his hands on top of his head and spread his feet, Defendant Colegio fired his taser at Plaintiff, striking him in the face and lower abdomen. The deployment of a taser during an arrest, investigatory stop, or other seizure may be unreasonable and constitute excessive force under certain circumstances. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Liberally construed, Plaintiff's allegations are sufficient to state a cognizable excessive force claim against Defendant Colegio under the Fourth Amendment.

    **2.  Fourth Amendment: Unreasonable Search and Seizure**

Plaintiff alleges that Defendant Colegio "initiated contact" with him "under the pretense

of consensual conversation" and was informed by police dispatch that Plaintiff was "clear of warrants/holds/etc." (Second Am. Compl. at 3–4.) Plaintiff claims that Defendant Colegio told him he was not under arrest, yet when Plaintiff attempted to leave, Defendant Colegio obstructed his path by grabbing Plaintiff's left wrist and attempting to trip him. (*Id.* at 3–5.) As Defendant Colegio only detained Plaintiff for purposes of an "investigatory stop" *(see id.* at 3), the Court will analyze Plaintiff's claim for unreasonable search and seizure in violation of the Fourth Amendment under investigatory stop jurisprudence.

Law enforcement officers may initiate an investigatory stop of a citizen if they have reasonable suspicion that a person is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The reasonable suspicion standard "'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). To constitute reasonable suspicion, the officer's belief that "criminal activity is afoot" must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* at 21, 30; *see also Navarette v. Cal.*, 134 S. Ct. 1683, 1687 (2014) (an officer must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity").

In this case, Plaintiff alleges that he was not a suspect or a threat and had no warrants at the time Defendant Colegio detained him on the basis that he was in a "'known' drug use and crime area." (Second Am. Compl. at 5.) Construing Plaintiff's complaint liberally and affording Plaintiff the benefit of any doubt, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), Plaintiff's allegations state a cognizable claim against Officer Colegio for unreasonable search and seizure in violation of the Fourth Amendment.

### 3. Municipal Liability

Local governments (*i.e.*, municipalities) are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). However, a local government's liability is limited. Although a local government may be held

liable for its official policies or customs, it cannot be held liable for an employee's actions outside the scope of these policies or customs. *Id*. at 691.

To state a civil rights claim under *Monell* against a local government related to a custom or policy, a plaintiff must set forth facts alleging the following: (1) the local government official(s) must have intentionally violated the plaintiff's constitutional rights, (2) the violation must be a part of policy or custom and may not be an isolated incident, and (3) there must be a link between the specific policy or custom to the plaintiff's injury. *See id.*, 436 U.S. at 690–92; *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough [under *Monell* ] for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

There are three ways to show a policy or custom of a municipality:

(1) A longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;

(2) The decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of the decision; or

(3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). A municipal policy may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. *Id.* Municipalities can be held liable "if its deliberate policy caused the constitutional violation alleged." *Blackenhorn*, 485 F.3d at 484.

A local governmental entity may also "be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006), *see*

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390(1989). "In particular . . . the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Collins*, 503 U.S. at 123 (citing *Canton*, 489 U.S. at 388)).

Plaintiff's Second Amended Complaint alleges that Defendant "Tulare Police Department" (City of Tulare) is liable under § 1983 because it is the "inadequate training, policy and custom of [Defendant] Tulare Police Department to not hold officers accountable for violating citizens rights." (Second Am. Compl. at 7.) According to Plaintiff, "[t]he injuries sustained are the result of Tulare Police Department policy that allows officers the choice to use professional decisions in the amount of force used, without fear of disciplinary action wether [sic] officer [is] wrong or right." (*Id.*) Plaintiff contends that the failure by Defendant "Tulare Police Department" (City of Tulare) to adequately train police officers not to violate the rights of citizens "is tantamount to tacit endorsement of the violation of such rights." (*Id.*)

Plaintiff cites and attaches to his Second Amended Complaint a document titled "Policy 300 Use of Force," which appears to be excerpted from a document titled "Tulare Police Department Policy Manual." (*See id.* at 7, 31–37.) This "Use of Force" policy provides that officers "shall use only that amount of force that reasonably appears necessary given [undecipherable] and circumstances perceived by the officer at the time of the event to accomplish a legitimate [undecipherable] enforcement purpose." (*Id.* at 31.) This policy, which could constitute the City of Tulare's "standard operating procedure," is not one that amounts to deliberate indifference of a constitutional right. *See Nieto v. Hodge*, No. 1:10-cv-01397-AWI-JLT(PC), 2010 WL 5200918, at *4 (E.D. Cal. Dec. 15, 2010), *report and recommendation adopted*, No. 1:10-CV-01397, 2011 WL 149824 (E.D. Cal. Jan. 18, 2011). In addition, other than his conclusory allegation that the City of Tulare has a "custom" of "not hold[ing] officers accountable for violating citizens rights," Plaintiff has provided no specific facts, outside of the subject incident (where the City found Defendant Colegio "not to have violated" the City's "Use of Force" policy), from which to infer that the City of Tulare systematically condones or

endorses the excessive use of force, or unlawful detentions and searches. Thus, Plaintiff's conclusory allegations, without specific supporting facts, are implausible. *See Alston v. Cty. of Sacramento*, No. CIV S–11–2281 GEB GGH PS, 2012 WL 2839825, at *8 (E.D. Cal. July 10, 2012), *report and recommendation adopted*, No. 2:11-CV-2281 GEB GGH, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012).

Plaintiff also fails to state a cognizable claim against Defendant "Tulare Police Department" (City of Tulare) for failure to train Defendant Colegio. A municipality's culpability for deprivation of rights is at its most tenuous where the claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). *See also Bryan Cty.*, 520 U.S. at 410 (When municipal policymakers are on actual or constructive notice that an omission in their training program causes employees to violate citizens' constitutional rights, the municipality is deliberately indifferent if it fails to act to correct the omission.). Failure to act in light of notice that its training program results in constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395.

As set forth by the undersigned in its prior screening order, the standard is an exacting one. Applying a less demanding standard in failure-to-train cases would circumvent the rule against *respondeat superior* liability of municipalities. *Id*. at 392. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials." *Penbauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986). To state a cognizable claim, a plaintiff must allege specific facts supporting the conclusion that the municipal entity had actual or constructive notice that their training program (or lack thereof) resulted in their employees' violating citizens' federal constitutional rights and that the municipality made a deliberate choice to train

11

(or not to train) its employees as a deliberate decision drawn from its consideration of various alternatives.

In the face of these very stringent requirements, Plaintiff still fails to allege any specific facts regarding obvious deficiencies in the City of Tulare's training program or the City's knowledge thereof. *See Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Plaintiff's naked allegation that Defendant "Tulare Police Department" (City of Tulare) has a "history of citizen complaints, alleging misconduct," (Second Am. Compl. at 8), without more, provides no basis from which one could conclude that the City of Tulare had notice that their training program (or lack thereof) resulted in their police officers using excessive force or engaging in unlawful searches and seizures against citizens. Although Plaintiff attaches and cites to the City of Tulare's responses to Plaintiff's Request for Admissions (*see id.* at 8) in his Second Amended Complaint,[4] those responses do not support Plaintiff's assertion (*see id.* at 23 (denying request for admission that "Tulare Police Department has a history of officer involved misconduct.")), and Plaintiff pleads no facts as to the nature of the "citizen complaints" and the "misconduct" they purportedly allege.

In sum, Plaintiff's conclusory pleading, unsupported by factual allegations, is insufficient to state a claim for liability under § 1983 against Defendant "Tulare Police Department" (City of Tulare). *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff has been granted leave to amend on two occasions, yet, despite having been provided the explicit recitation of the deficiencies of his pleadings and the applicable legal standards, his latest

---

[4] In addition to excepts from the "Tulare Police Department Policy Manual" and the City of Tulare's discovery responses, Plaintiff also attaches as an exhibit to his Second Amended Complaint a document titled "Defendants Claim of Failure to Exhaust Administrative Remedies Must Fail Where Police Employ Excessive Force," containing what appears to be legal argument in response to a claim of failure to exhaust administrative remedies (*see id.* at 9–10.) As there is no claim that Plaintiff failed to exhaust administrative remedies presently at issue in this case, and the exhibit contains no *factual* allegations that could be construed as supporting the claims alleged, the undersigned does not consider the exhibit as included within the Second Amended Complaint.

amendment demonstrates that he is unable to marshal facts sufficient to constitute a cognizable federal claim against the City of Tulare. "Complaints that are filed in repeated and knowing violation of Federal Rule 8's pleading requirements are a great drain on the court system, and the reviewing court cannot be expected to 'fish a gold coin from a bucket of mud.'" *Knapp v. Hogan*, 738 F.3d 1106, 1111 (9th Cir. 2013) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). Accordingly, the undersigned recommends that Defendant "Tulare Police Department" (City of Tulare) be dismissed with prejudice. *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996); *McHenry v. Renne*, 84 F.3d 1172, 1177–78, 1180 (9th Cir. 1996) (dismissal with prejudice appropriate where deficiencies of complaint were explained, time was afforded to amend, and the plaintiff was warned that failure to cure deficiencies would result in dismissal).

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth more fully above, Plaintiff's motion for extension of time to file an amended complaint (Doc. 63) is HEREBY GRANTED, nunc pro tunc to December 13, 2017, and the Court RECOMMENDS that Plaintiff be allowed to proceed only on his excessive force and unreasonable search and seizure claims against Defendant Jose Colegio and that Defendant "Tulare Police Department" (City of Tulare) be DISMISSED WITH PREJUDICE for failure to state a claim.

The Court RECOMMENDS that Plaintiff's motion for summary judgment (Doc. 60) be DENIED WITHOUT PREJUDICE as to Plaintiff's excessive force and unreasonable search and seizure claims against Defendant Jose Colegio; Defendant Colegio has not yet been served and has made no appearance in the action, therefore the motion directed to claims against him is premature, *see Hollis v.* Santoro, No. 1:16-cv-01683-DAD-BAM (PC), 2017 WL 68330, at *1 (E.D. Cal. Jan. 5, 2017). The Court FURTHER RECOMMENDS Plaintiff's motion for summary judgment (Doc. 60) directed to claims against Defendant "Tulare Police Department" (City of Tulare) be DENIED as MOOT, in view of the Court's above-recommendation of dismissal with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**January 10, 2018**__         /s/ *Sheila K. Oberto*
                                     UNITED STATES MAGISTRATE JUDGE